1    **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                         **FOR THE DISTRICT OF ARIZONA**

8

9    Indie Caps LLC                          No. CV-20-01970-PHX-DJH

10                      Plaintiff,            **ORDER**

11   v.

12   Thomas Ackerman,

13                      Defendant.

14          Following a three-day trial in December 2022, the jury returned a verdict in favor

15   of Plaintiff Indie Caps LLC ("Indie Caps") and against Defendant Thomas P. Ackerman

16   ("Mr. Ackerman") for $3,250,000.00.   (Doc. 87).[1]   Mr. Ackerman had moved for a

17   directed verdict before the case was submitted to the jury, which the Court denied.

18   (Doc. 99 at 103–112).  Now pending is Mr. Ackerman's renewed "Motion for Judgment

19   as a Matter of Law and Motion [for] New Trial" (Doc. 95).[2]   The Court must decide

20   whether Mr. Ackerman is entitled to judgment under Federal Rule of Civil

21   Procedure 50(b) or entitled to new trial under Rule 59.[3]  For the following reasons, the

22   Court denies Mr. Ackerman's Motion in its entirety.

23   **I.    Background**

24          Indie Caps argued claims for breach of contract, breach of the duty of good faith

25   _____

26   [1] The Clerk of Court entered judgment accordingly.  (Doc. 89).

27   [2] The matter is fully briefed.  Indie Caps filed a Response in Opposition (Doc. 96), and
     Mr. Ackerman filed a Reply.  (Doc. 100).

28   [3] Unless where otherwise noted, all Rule references are to the Federal Rules of Civil
     Procedure.

and fair dealing, unjust enrichment, and violation of the Trade Secrets Act. (Doc. 87 at 1–2).  Indie Caps also sought punitive and exemplary damages.  (*Id*. at 2–3).  Mr. Ackerman worked at Indie Caps from 2013–April 30, 2020.  (Doc. 99 at 19, 29).  At trial, Indie Caps represented that Mr. Ackerman entered into an "Agreement for Protection of Confidential Information, Trade Secrets and Customers" at the start of his employment at Indie Caps in 2013.  (Doc. 97 at 117).  Among other things, the agreement prevented Mr. Ackerman from "disclos[ing] or us[ing] for his own benefit any of [Indie Caps'] confidential information, including, without limitation, aging lists or accounts receivable, customer lists, pricing, profit margins, estimating information, or any other information which [Indie Caps'] has designated confidential."  (*Id*. at 120).  Indie Caps also presented evidence that Mr. Ackerman, while working at Indie Caps, helped Harvey Mackler ("Mr. Mackler") start a competing business  "Gempire."[4]

Mr. Ackerman argued counterclaims for breach of contract, breach of the duty of good faith and fair dealing, and unjust enrichment.  (Doc. 87 at 3–4).  He also sought punitive damages.  (*Id*. at 4).  Mr. Ackerman maintained he did not share any of Indie Caps' information that he believed to be confidential.  (Doc. 97 at 15).  He alleged there was an agreement in 2016 for Mr. Ackerman to receive twenty five (25) percent commission and a ten (10) percent profit sharing, which Mr. Ackerman believed to be a partnership.  (Doc. 99 at 79–80).  Mr. Ackerman countersued Indie Caps for failing to pay him profit sharing that he was owed.  (Doc. 97 at 15).

Mr. Ackerman moved for a directed verdict at the close of trial on three issues. (Doc. 99 at 103–105).  First, Mr. Ackerman argued Indie Caps did not set forth sufficient evidence showing he acted with an evil mind or engaged in malicious or fraudulent conduct that would entitle Indie Caps to punitive damages.  (*Id*. at 104).  Second, Mr. Ackerman maintained Indie Caps did not establish he owed it a fiduciary duty because he was an independent contractor.  (*Id*.)  Last,  Mr. Ackerman contended Indie Caps failed to show the itemized damages necessary to prevail on a breach of contract

---

[4] Mr. Mackler and Gempire were formerly named defendants in this case but were dismissed for lack of jurisdiction.  (Doc. 47).

1    claim and only relied on conjecture and speculation.  (*Id*. at 105).  The Court rejected Mr.

2    Ackerman's motion on all three grounds and submitted the case to the jury.  (*Id*. at 111–

3    112).

4         The jury returned a verdict in favor of Indie Caps and against Mr. Ackerman on all

5    of Indie Caps' claims except for unjust enrichment.    (Doc. 87).  On the breach of

6    contract claim, the jury awarded Indie Caps $500,000.00 in lost profits.  On the breach of

7    the duty of good faith and fair dealing claim, the jury awarded Indie Caps $500,000.00 in

8    damages.    On the violation of trade secrets claim, the jury awarded Indie Caps

9    $500,000.00 in damages.  (*Id*. at 1–2).  The jury also awarded Indie Caps $250,000.00 in

10   punitive damages and $1,500,000.00 in exemplary damages.  (*Id*. at 2–3).  Mr. Ackerman

11   did not prevail on any of his counterclaims.  (*Id*. at 3–4).

12   **II.    Discussion**

13        The Court now considers Mr. Ackerman's Motion for Judgment as a Matter of

14   Law and Motion for New Trial (Doc. 95).   Mr. Ackerman argues the Court should

15   overturn the jury's verdict and enter judgment in favor of Mr. Ackerman under

16   Rule 50(b) because Indie Caps did not present sufficient evidence at trial.  (*Id*. at 2).

17   Alternatively, Mr. Ackerman contends he should be granted a new trial under Rule 59

18   due to "irregularities and unfairness in the proceeding."  (*Id*.)  The Court will consider

19   each of Mr. Ackerman's requests.

20       **A.    Motion for Judgment as a Matter of Law**

21        Mr. Ackerman again seeks judgment as a matter of law on the issues of punitive

22   damages, fiduciary duty, and breach of contract damages.  The Court will set forth the

23   legal standard under Rule 50 before addressing Mr. Ackerman's three arguments.

24          **1.    Rule 50**

25        Rule 50 requires a party seeking judgment as a matter of law to file a Rule 50(a)

26   motion before the case is submitted to the jury.  Fed. R. Civ. P. 50(a).  If the jury returns

27   a verdict against the moving party, it may file a Rule 50(b) motion for judgment as a

28   matter of law, "which may also include a request for a new trial under Rule 59[.]"

1    *Dupree v. Younger*, 143 S. Ct. 1382, 1387 (2023); Fed. R. Civ. P. 50(b).  "[A] Rule 50(b)

2    motion may be considered only if a Rule 50(a) motion for judgment as a matter of law

3    has been previously made."  *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075,

4    1081 (9th Cir. 2009).

5          When evaluating a Rule 50(b) motion, a district court "must not substitute its own

6    credibility assessments and its weighing of the evidence for the jury's; it must limit itself

7    to determining whether the jury's verdict is supported by substantial evidence."  *McGhee*

8    *v. Arabian American Oil Company*, 871 F.2d 1412, 1416 (9th Cir. 1989) (citing *William*

9    *Inglis & Sons Baking Co. v. ITT Continental Baking Co.*, 668 F.2d 1014, 1026 (9th Cir.

10   1981)).   Substantial evidence is defined as "such relevant evidence as reasonable minds

11   might accept as adequate to support a conclusion even if it is possible to draw two

12   inconsistent conclusions from the evidence."  *Landes Constr. Co. v. Royal Bank of*

13   *Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987).  The standard under Rule 50(b) "largely

14   'mirrors' the summary-judgment standard," but "in light of the trial record rather than the

15   discovery record."  *Dupree*, 143 S. Ct. at 1387 (citing *Anderson v. Liberty Lobby, Inc.*,

16   477 U. S. 242, 250–251 (1986)).

17         Granting a renewed motion for judgment as a matter of law is proper when the

18   moving party shows the trial record "permits only one reasonable conclusion as to the

19   verdict and that conclusion is contrary to the jury's; it is improper if reasonable minds

20   could differ over the verdict."  *Air-Sea Forwarders, Inc. v. Air Asia Co*., 880 F.2d 176,

21   181 (9th Cir. 1989); *see also Castro v. County of Los Angeles*, 833 F.3d 1060, 1066 (9th

22   Cir. 2016).   Thus, the movant's burden is a heavy one.  Courts must construe the

23   evidence in the light most favorable to the non-moving party.  *Air-Sea Forwarders*, 880

24   F.2d at 18.

25                     **2.      Evidence of Conduct Justifying Punitive Damages**

26         First, Mr. Ackerman renews his argument that punitive damages are not justified.

27   A punitive damages claim will be submitted to the jury when there is proof that the

28   defendant's conduct "either (1) intended to cause harm, (2) w[as] motivated by spite, or

(3) w[as] outrageous, creating a 'substantial risk of tremendous harm to others.'"  *Swift Transportation Co. of Arizona L.L.C. v. Carman in & for Cnty. of Yavapai*, 515 P.3d 685, 692 (Ariz. 2022) (quoting *Volz v. Coleman Co.*, 748 P.2d 1191, 1194–95 (Ariz. 1987)). A defendant's "conscious and deliberate disregard of the interests and rights" of the plaintiff will also suffice.  *Id.* (quoting *Gurule v. Ill. Mut. Life & Cas. Co.*, 734 P.2d 85, 87 (Ariz. 1987)).

"In cases of willful and malicious misappropriation of trade secrets, punitive damages might be easier to obtain under [Arizona Uniform Trade Secrets Act] than under our common law, which requires clear and convincing evidence of a defendant's 'evil mind' for a punitive damages award."  *Orca Communs. Unlimited, Ltd. Liab. Co. v. Noder*, 337 P.3d 545, 548 (Ariz. 2014).  This is because the Arizona Uniform Trade Secrets Act does not impose the heightened clear and convincing standard of proof for a punitive damages award.  *Id.*  Indeed, the jury was instructed that Indie Caps "ha[d] the burden of proving by a preponderance of the evidence that punitive damages should be awarded and, if so, the amount of any such damages."  (Doc. 86 at 30).

Mr. Ackerman states that Indie Caps "presented no evidence of conduct approaching the level of outrageous evil intending harm to justify punitive damages." (Doc. 95 at 4).  This conclusory statement is plainly deficient under Rule 50 standards. At trial, Mr. Ackerman admitted he signed an agreement "not to disclose or use for [his] own benefit any of Indie Caps' confidential information, including without limitation aging lists, accounts receivable, customer lists, pricing, profit margins, estimating information, or any other information which Indie Caps has designated confidential[.]" (Doc. 99 at 20–21).  Indie Caps presented a collection of emails from August 2019–April 2020 showing Mr. Ackerman's self-dealings with Indie Caps competitors while working for Indie Caps.  (*See* Doc. 98 at 169–253).  Mr. Ackerman admitted he helped Mr. Mackler start Gempire, a competing business, while working at Indie Caps. (*See* Doc. 99 at 25–26).  Mr. Ackerman admitted he disclosed Indie Caps' confidential manufacturer, design, and product information to Mr. Mackler.  (*See id.* at 22–23, 25,

28, 37).   Mr. Ackerman admitted that Gempire advertised Indie Caps' products to compete with Indie Caps.  (*See id*. at 28).  He further admitted he deleted evidence of his emails while working at Indie Caps.  (*See id*. at 30).

Based on these examples, it is reasonable for a jury to conclude that Mr. Ackerman's intentional acts were in "conscious and deliberate disregard" of Indie Caps' interests.  *Gurule*, 734 P.2d at 87.  The Court therefore finds there is substantial evidence in the trial record to support the jury's award of punitive damages.

### 3.    Evidence of Fiduciary Duty

Second, Mr. Ackerman again argues he did not hold a fiduciary relationship with Indie Caps as a matter of law because "there must be a specific contractual agreement to create a fiduciary duty '[o]r a peculiar intimacy' and 'greater knowledge, skill, or training . . . .'"  (Doc. 100 at 6 citing *Cook v. Orkin Exterminating Co. Inc*., 258 P.3d 149, 152 (Ariz. Ct. App. 2011)).  He concludes, without referencing any portion of the trial record, that "the evidence showed clearly that [he] was an independent contractor."  (Doc. 95 at 3).

Mr. Ackerman fails his to meet his burden of demonstrating the evidence supports only one reasonable conclusion that he was not a fiduciary.   There was evidence presented at trial showing Mr. Ackerman entered into an agreement to hold certain information of Indie Caps as confidential.  (*See, e.g.*, Docs. 97 at 117–121; 99 at 20).  Mr. Adam Klein ("Mr. Klein"), the founder of Indie Caps, testified he did not share confidential information with Mr. Ackerman until he signed the agreement.  (Doc. 97 at 119).  A jury could infer from this agreement the type of intimacy and knowledge that is sufficient to create a fiduciary duty on part of Mr. Ackerman.  The jury also heard competing testimony as to the precise nature and scope of Mr. Ackerman's business relationship with Indie caps.  (*Compare* Doc. 97 at 119–124 *with* Doc. 99 at 20).  And the Court "must not substitute its own credibility assessments and its weighing of the evidence for the jury's."  *McGhee*, 871 F.2d at 1416.

Reasonable minds could differ as to whether Mr. Ackerman was a fiduciary.  So,

1   the Court will not disturb the jury's verdict finding him as such.

2   **4.    Evidence of Breach of Contract Damages**

3   Last, Mr. Ackerman contends he is entitled to judgment on Indie Caps' breach of

4   contract claim because Indie Caps did not demonstrate with "reasonable certainty" its

5   resulting past or future damages under *Gilmore v. Cohen*. (Doc. 100 at 2–3 citing 386

6   P.2d 81, 82 (Ariz. 1963)).   Mr. Ackerman argues "[t]he only evidence [Indie Caps]

7   presented were hearsay statements from former competitor and codefendant

8   Gempire, LLC[5] showing how much that company grossed from hat sales during 2020.  It

9   did not show that but for Defendants conduct, Indie Caps would have gotten that business

10  and it did not show how much money Indie Caps would have netted after expenses."

11  (Doc. 95 at 2–3).[6]  He maintains that Mr. Klein "could not . . . testify to specific jobs lost

12  to [Mr.] Ackerman," and such speculative testimonial evidence is insufficient.

13  (Doc. 100 at 3).  The Court disagrees.

14          **a.    There Must be Some Basis for the Jury to Estimate**
15                 **Damages**

16  Under Arizona law, the plaintiff bears the burden of showing its damages with

17  "reasonable certainty" because "conjecture or speculation" cannot serve the basis for

18  damages. *Gilmore*, 386 P.2d at 82.  When the plaintiff seeks loss of future profits

19  specifically, the reasonable certainty requirement is applied "with added force[.]"   *Id.*

20  The plaintiff's evidence in these cases "should supply some reasonable basis for

21  computing the amount of damage and must do so with such precision as . . . is possible."

22  *Id.* at 83.

23  However, a competing policy is "that 'certainty in amount' of damages is not

24  _____

25  [5] This is a misstatement of fact.  Gempire is no longer a named defendant in this case.
    (Doc. 47).

26  [6] Mr. Ackerman also argues Indie Caps did not present any evidence that it attempted to
27  mitigate its damages.  (Docs. 95 at 3; 100 at 4–5).  However, Mr. Ackerman did not make
    this argument in his motion for a directed verdict before the case was submitted to the
    jury, and may not do so now.   *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th
28  Cir. 2003) ("A party cannot raise arguments in its post-trial motion for judgment as a
    matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion.");
    *see supra* Section I.

essential to recovery when the *fact* of damage is proven." *Gilmore*, 386 P.2d at 82 (emphasis in original); *see also Harris Cattle Co. v. Paradise Motors*, 448 P.2d 866, 868 (Ariz. 1968); *see also Jacob v. Miner*, 191 P.2d 734, 738 (Ariz. 1948). In other words, the rule precluding recovery of uncertain damages does not apply to "damages which are definitely attributable to the wrong and only uncertain in respect of their amount." *Harris*, 448 P.2d at 868 (quoting *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555 (1931)). This distinction is fundamental because where it "clearly appears that a party has suffered damage, a more liberal rule should be applied in allowing the court or jury to determine the amount of the damage than should be applied in weighing evidence on the question of whether or not the acts" resulted in damages. *Jacob*, 191 P.2d at 738–39. But this recognition "cannot dispel and requirement that the plaintiff's evidence provide some basis for estimating his loss." *Gilmore*, 386 P.2d at 82.

Mr. Ackerman argues this matter is controlled by *Gilmore*. There, the Arizona Supreme Court considered whether it was error for the trial court to prohibit recovery of lost profits in a breach of contract action. *Gilmore*, 386 P.2d at 82. *Gilmore* ultimately affirmed, noting the plaintiffs' evidence of damages was solely in the form of weak testimonials that were inherently ambiguous, uncertain, and confusing. *Id*. at 83. The plaintiffs did not provide any formal accounting records or "informal memoranda of previous transactions or even past income tax returns showing the profits from" the plaintiffs' previous sales. *Id*. Without such evidence, plaintiff's could not establish lost profits with reasonable certainty. *Id*. That is not so here.

### b.    Indie Caps Showed it Sustained Loss Profits

The Court finds the present matter distinguishable from *Gilmore* for two reasons. First, the plaintiffs in *Gilmore* did not prove the fact of lost profits. *See id*. at 83 ("The plaintiffs seemed uncertain that they had ever shown a profit from the operation or that future profits were likely to accure [sic]."). By contrast, Indie Caps presented evidence of its profit history and that it generated substantially less profits during the time Mr. Ackerman engaged in self-dealings with Indie Caps competitors in 2019–2020. For

example, Mr. Ackerman testified he generated Indie Caps almost $5 million in three years of sales spanning 2016–2019.  (Doc. 99 at 52–53).  He further testified he produced $95,000 in sales in the first four months in 2020, which is the time of Mr. Ackerman's admitted misconduct.[7]  (*Id.* at 53).  And both Mr. Ackerman and Mr. Klein agreed Mr. Ackerman was responsible for roughly 75 percent of Indie Caps' sales at the time Mr. Ackerman left his employment.  (See Docs. 98 at 121; 99 at 54).  Mr. Ackerman further confirmed Indie Caps loss in sales upon his departure:

> Q.    Will you agree that you were doing approximately, over a three-year period before you left Indie Caps, in excess of $1.6 million in sales?
>
> A.    On average, that's about accurate, yes.
>
> Q.    And those sales evaporated when you left Indie Caps; correct?
>
> A.    According to Mr. Klein's financials and you, yes.

(Doc. 99 at 56).  The Court finds the record establishes Indie Caps in fact lost profits.

### c.    Indie Caps Provided Informal Records of Damages

Second, this matter is distinguishable from *Gilmore* because the plaintiffs there failed to provide *any* basis for calculating damages apart from uncertain testimony.  Here, the jury was presented with informal e-mail summaries of certain orders that caused Indie Caps to incur loss because the orders were canceled by clients before being sent for production.  (Doc. 98 at 112–127).  For example, one e-mail itemized an order by specific amounts, including total pieces ordered, net cost liability, manufacturing cost, duty payment, air shipment, deposit total, deposit difference, total liability, and K-1 payout owed to Mr. Ackerman.  (*Id.* at 112–127).  The jury also heard competing testimony as to whether Mr. Ackerman approved these orders before they were canceled (*see, e.g.*, Docs. 98 at 122; 99 at 29), and whether he received his requested commission on orders that were never fulfilled.  (*See, e.g.*, Docs. 98 at 74; 99 at 50–51).  This evidence constitutes informal memoranda that were missing from *Gilmore*, and is for the

---

[7] Mr. Ackerman's last day at Indie Caps was April 30, 2020.  (Doc. 99 at 29).

jury to weigh.

It is true that Mr. Ackerman initially objected to Indie Caps presenting itemized sales lists from Gempire (the "Gempire sales list") as hearsay because Mr. Mackler generated it, and the Court sustained those objections. (Doc. 97 at 150). Mr. Ackerman's Counsel, however, then stipulated to the admission of the Gempire sales lists. (Doc. 98 at 152, 162–163, 167). When Indie Caps introduced evidence of the Gempire sales lists, Counsel for Mr. Ackerman did not object to its admission. (Doc. 98 162–163, 167); *see United States v. Gomez-Norena*, 908 F.2d 497, 500 (9th Cir. 1990) ("[A] party fails to preserve an evidentiary issue for appeal . . . by failing to make a specific objection[.]"). Mr. Ackerman, while under oath, later referenced the Gempire sales lists to confirm the revenue he generated at Gempire in the months immediately after he left Indie Caps:

> Q.    Can you confirm for the jury that there were approximately 400,000, more than $400,000 in sales that you originated with Mr. Mackler from June [2020] to November 30th [2020]?
>
> A.    Those documents, yes. Those numbers Mr. Mackler provided that I assume are correct, then yes.

(Doc. 99 at 55). Mr. Klein also identified certain customers on the Gempire sales lists to be Indie Caps' clients. (Doc. 98 at 167–168). In totality, this evidence provides some basis for the jury to estimate Indie Caps' loss in profits that resulted from Mr. Ackerman's breach of contract. *See Gilmore*, 386 P.2d at 82. Mr. Ackerman does not account for this additional evidence or Indie Caps' presentation of informal records in his Motion for Judgment as a Matter of Law. It is possible that reasonable minds might accept such evidence as adequate to support past and future damages stemming from Mr. Ackerman's conduct.

In sum, the Court finds the present matter is distinguishable from *Gilmore* because the trial record shows evidence that (1) Indie Caps clearly sustained loss profits; and (2) Indie Caps provided at least some basis for calculating lost profits through informal

1   memoranda.  Under the more liberal rule allowing jury to determine the amount of the
2   damage when the fact of damage is proven, there is sufficient evidence in the trial record
3   for the jury to estimate Indie Caps past and future lost profits.  *Jacob*, 191 P.2d at 738–
4   39; *Harris*, 448 P.2d at 868 ("Difficulty is ascertaining the damages, or uncertainty as to
5   the amount, provides no basis in logic for denial In toto. If the evidence affords a
6   reasonable basis for establishing the loss, an issue arises to be resolved by the trier of the
7   facts.").

8          When construing the trial record in favor of Indie Caps, as the Court must, a
9   reasonable jury could have found in favor of Indie Caps on the issues of punitive
10  damages, fiduciary duty, and breach of contract damages.  Mr. Ackerman has provided
11  no evidence showing the there is only *one* reasonable conclusion in his favor on either
12  ground.  Thus, the Court will uphold the jury's verdict notwithstanding the possibility
13  that reasonable minds could draw contrary conclusions.  *See Castro*, 833 F.3d at 1066.
14  Mr. Ackerman's Motion for Judgment as a Matter of Law is denied.

15          **B.     Motion for a New Trial**

16          Alternatively, Mr. Ackerman moves for a new trial on all of Indie Caps' claims on
17  two grounds: (1) evidence of his prior conviction was improperly introduced during trial,
18  and (2) Mr. Ackerman's Counsel was forced to agree to the admission of certain exhibits.
19  (Doc. 95 at 5).[8]   The Court will set forth the legal standard under Rule 59 before
20  addressing Mr. Ackerman's arguments.

21          **1.     Legal Standard: Rule 59**

22          Rule 59 requires a party seeking a new trial to file motion within 28 days after the
23  entry of judgment.  Fed. R. Civ. P. 59(b).  The court may grant a new trial on all or some
24  of the issues "after a jury trial, for any reason for which a new trial has heretofore been

25  _____
[8] Mr. Ackerman raises a number of additional arguments in his Reply, including: (1) the
26  jury returned an excessive award of damages; (2) the jury ignored the jury instructions;
    (3) there was no evidence of unjust enrichment; (4) Indie Caps did not prove the
27  existence of trade secrets; (5) Indie Caps did not offer evidence that trade secret
    misappropriation caused damages; (6) Mr. Ackerman proved his counterclaims.
28  (Doc. 100 at 9–11).  The Court will not consider these points because a party cannot raise
    arguments for the first time in a reply brief.  *See Larson v. Johnson*, 2007 WL 2023485,
    at *4 (D. Ariz. July 12, 2007); *United States v. Ullah*, 976 F.2d 509, 514 (9th Cir. 1992).

granted in an action at law in federal court[.]" Fed. R. Civ. P. 59(a)(1)(A).  Rule 59 does not explicitly set forth the grounds in which a new trial should be granted.  *Id*.  However, a trial court is "bound by those grounds that have been historically recognized" including but not limited to arguments "that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving."  *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)).  In the Ninth Circuit, "[t]he trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice."  *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000).  "[T]he burden of showing harmful error rests on the party seeking the new trial."  *Randle v. Franklin*, 2011 WL 2064850, at *1 (E.D. Cal. May 25, 2011), *aff'd*, 507 F. App'x 653 (9th Cir. 2013) (quoting 11 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2803 (1995)).

### 2.  Mr. Ackerman's Prior Conviction

Mr. Ackerman first contends he is entitled to a new trial because introduction of his past conviction to the jury violated Federal Rule of Evidence 609(b).  (Doc. 95 at 4).  Yet again, Mr. Ackerman provides no analysis to support his position.  Mr. Ackerman's prior conviction was the subject of his Motion in Limine (Doc. 59), which this Court carefully considered and denied (Doc. 64).  The Court thus construes his argument as one that challenges its evidentiary ruling.

Erroneous evidentiary rulings are grounds for a mistrial only when the moving party shows it was "substantially prejudiced" by the ruling.  *Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995) (citing *United States v. 99.66 Acres of Land*, 970 F.2d 651, 658 (9th Cir. 1992)).  Mr. Ackerman argues the jury's "outlandish verdict was based on passion and prejudice stemming from the admission of . . . [Mr. Ackerman's] old felony conviction rather than any actual evidence of harm or damages."  (Doc. 95 at 4).  But interestingly, it is Mr. Ackerman's Counsel who introduced the prior

conviction in the first instance at trial through his opening statement.  (Doc. 97 at 77).  In fact, Mr. Ackerman's Counsel introduced the prior conviction after the Court specifically cautioned Indie Caps' Counsel not to raise the prior conviction in his opening statement, to which he abided.  (*Id.* at 7).  "A party who preemptively introduces evidence of a prior conviction . . . may not later claim that the admission of such evidence was error." *Muhammad v. Conner*, 2012 WL 2428937, at *5 (N.D. Cal. June 26, 2012) (citing *Ohler v. United States*, 529 U.S. 753, 754 (2000)).  Because Mr. Ackerman's Counsel introduced the prior conviction in the attempt to preemptively rehabilitate Mr. Ackerman, he cannot now claim its admission posed substantial prejudice.  The Court will not grant a new trial based on this argument.

### 3.    The Parties' Stipulation Regarding the Gempire Sales Lists

Mr. Ackerman next argues a new trial is warranted due to "irregularities in the proceedings."  (Doc. 95 at 5).   He maintains "[t]his Court threatened a mistrial after Defense counsel's cross examination of [Mr.] Klein wherein he laid bare the fact that [Mr.] Klein had no admissible evidence that he was damaged because of [Mr.] Ackerman's conduct."  (*Id.* at 6).  Mr. Ackerman states the Court's conduct "forced" his Counsel to stipulate to admission of the Gempire sales lists, which were hearsay and lacked foundation.  (Docs. 95 at 6; 100 at 7).

Indie Caps responds that Mr. Ackerman's statements are false and "the Court never threatened a mistrial."  (Doc. 96 at 7).  Its position is "[t]he Court correctly identified an issue that jeopardized the integrity of the trial and requested the parties to discuss whether the issue could be fairly resolved by agreement and the trial proceed, or whether either of the parties wanted a mistrial."  (*Id.*)  Indie Caps maintains the parties discussed the issue of admissibility and mutually agreed to admission of certain exhibits so the trial could continue, with Mr. Ackerman's Counsel demanding that trial continue. (*Id.* at 8).  The Court agrees with Indie Caps.

Mr. Ackerman grossly misstates the trial record.   There was certainly a misunderstanding between Mr. Ackerman's Counsel—Mr. Bradford—and Indie Caps'

Counsel—Mr. Mckay—regarding whether or not Mr. Bradford waived his hearsay and foundation objections to the Gempire sales lists by not specifying the objections in the parties' Joint Proposed Final Pretrial Order (Doc. 62-1).[9]   This misunderstanding manifested at trial during Mr. Mckay's direct examination of Mr. Klein. (Doc. 97 at 149–152).   To address the issue, the Court presented two options for the parties to meet and confer over the lunch break: (1) The Court could permit Mr. Mckay to introduce the exhibits that had not been specifically objected to in the parties' Joint Proposed Final Pretrial Order and let the jury have the case; or (2) the Court could declare a mistrial to permit Mr. McKay to find those witnesses who could competently testify to those exhibits that Mr. Bradford intended to object to.  (Doc. 98 at 90).

When the parties reconvened, Mr. Mckay explained he had proposed they proceed by allowing into evidence the exhibits containing the Gempire sales lists and Mr. Ackerman's emails with Mr. Mackler.  (*Id.* at 140–141).  Mr. Bradford rejected the offer and intended to make hearsay objections to those exhibits.  (*Id.* at 141).  In light of the parties' disagreement, the Court proceeded in the following manner:

> And so I think at this juncture, what I am inclined to do is to declare a mistrial because—let me explain to you the Court's gatekeeping function that it takes extraordinarily seriously.
>
> Let's assume that in fairness to Mr. Bradford I say, "You apparently have an understanding that you can raise foundation, a hearsay objection, a relevance objection to every single one of the exhibits that are going to be introduced." Then, I have to weigh whether or not the—one of the listed witnesses that Mr. McKay has, or Mr. Klein, can competently testify as to those documents.
>
> Right now, at least as to the objectionable exhibit from Mr. McKay and his financial documents, I can't so find. And so it is to Mr. McKay and

---

[9] Mr. Bradford also objects that the Court improperly considered the parties' original Joint Proposed Final Pretrial Order (Doc. 61) and not the revised version in Mr. Bradford's Notice of Errata (Doc. 62-1).  The Court considers this a non-issue.  In any event, Mr. Bradford admitted he filed the revised version (Doc. 62-1) with additions while Mr. Mckay was unavailable and without Mr. Mckay being aware of his additions. (Doc. 98 at 145).  And, under either filing, Mr. Bradford did not specifically designate any objections to the Gempire sales lists contained in exhibits 100 and 101.  (*Compare* Doc. 61 at 15 ¶ 5.1 at *with* Doc. 62-1 at 15 ¶ 5.1).

his client that he was operating under an understanding that there would be no foundational objection. There would be no hearsay objection.

But at the same time, I think there is also an unfairness to Mr. Bradford because he felt that he preserved those objections. And it is simply also going to run into a dilemma where we have a jury who believes that their service ends tomorrow. And in order to give Mr. McKay the opportunity to call a competent witness, that's simply not going to happen.

And so I will declare a mistrial to prevent manifest error from continuing to happen, or to happen, and I will release the jury.

(*Id*. at 147–148).

Mr. Bradford protested.  He first complained:  "You're asking my client to spend another $80,000 and travel across the country . . . . This is manifestly unfair to my client. It is—the idea of it to allow [Mr. Mckay] to have a second shot [sic] at the apple." (*Id*. at 148).  He then conceded: "I don't care. [Mr. Mckay] can have the Mackler e-mail, Mackler's testimony, and all the other third-party people. Those—you can have them all."  (*Id*. at 151).  To be sure, the Court reiterated to Mr. Bradford the proposal was that "Mr. Klein be permitted to testify as to a discreet set of exhibits that contain only e-mails between Mr. Ackerman and . . . Mr. Mackler and whatever was on his . . . e-mail accounts that were discoverable."  (*Id*. at 152).  The Gempire sales lists were among the exhibits that were produced in discovery by Mr. Mackler and disclosed to Mr. Ackerman. (*Id*. at 137).   Mr. Bradford ultimately confirmed his stipulation to admission of the exhibits:

We stipulate. [Mr. Mckay] can have them. He can have the—all the conversations between [Mr. Ackerman] and [Mr. Mackler].  He can have all the conversation between [Mr. Ackerman] and every random distributor . . . . [Mr. Mckay's] case, it's not there.  He can have it. I am — I'm giving it.

(*Id*. at 153).  Mr. Mckay also accepted.  (*Id*.)  The question now is whether Mr. Bradford is bound by this stipulation.

Stipulations freely entered into in civil actions are binding and enforceable.  ***See***

*United States v. Molina*, 596 F.3d 1166, 1169 (9th Cir. 2010); *United States v. Technic Servs., Inc.*, 314 F.3d 1031, 1045 (9th Cir. 2002). "Because stipulations serve both judicial economy and the convenience of the parties, courts will enforce them absent indications of involuntary or uninformed consent." *CDN Inc. v. Kapes*, 197 F.3d 1256, 1258 (9th Cir. 1999). Thus, a "'defendant who has stipulated to the admission of evidence cannot later complain about its admissibility' unless he can show that that the stipulation was involuntary." *Molina*, 596 F.3d at 1169 (quoting *Technic Servs., Inc.*, 314 F.3d at 1045) (affirming the district court's admission of hearsay evidence under the parties' stipulation in a criminal trial). "A stipulation should be interpreted as to carry out the parties' intentions." *United States v. Bautista*, 2018 WL 6069640, at *8 (D. Ariz. Oct. 29, 2018), *report and recommendation adopted as modified*, 2018 WL 6067284 (D. Ariz. Nov. 20, 2018) (citing *United States v. Petty*, 80 F.3d 1384, 1387 (9th Cir. 1996)).

According to the record, Mr. Bradford objected to admission of the Gempire sales lists due to hearsay, was afforded with the opportunity to meet and confer with Mr. Mckay over a possible mistrial, demanded that trial continue, and stipulated to the admission of the exhibits in order to proceed. Mr. Bradford upheld his stipulation and did not object to admission of the Gempire sales lists when Mr. Mckay introduced them later during the trial. (Doc. 98 162–163, 167). The Court did not use a mistrial as a threat to induce Mr. Bradford's stipulation. (Doc. 95 at 6). In the interest of fairness among the parties, the Court proposed a mistrial to allow Mr. Bradford to preserve his objections for the new trial, to which he declined. Mr. Bradford did not have to stipulate to admission—he did so voluntarily. Mr. Bradford now seeks the very relief he resisted: a new trial. The Court will not allow Mr. Bradford to renege on the stipulation he voluntarily made in open court.[10] *See Molina*, 596 F.3d at 1169. To do so would be unfairly prejudicial to Indie Caps and impede judicial economy. Nor will the

_____

[10] Irrespective of the Court's enforcement of the parties' stipulation, Mr. Ackerman infers harmless error by saying "admission of these tangential hearsay documents should not have mattered anyway . . . . It did not matter to the jury anyway[.]" (Doc. 95 at 6). This concession is far from sufficient to meet his burden of proving a harmful error that warrants a new trial. *See Randle*, 2011 WL 2064850, at *1.

Court allow Mr. Bradford to renegotiate for an option he blatantly refused after the Court offered it to him at trial.  To do so would allow Mr. Ackerman an unjustified, second bite of the apple.

**III.    Conclusion**

Mr. Ackerman is neither entitled to judgment as a matter of law under Rule 50(b), nor entitled to a new trial under Rule 59.  When construing the trial record in favor of Indie Caps, as the Court must under Rule 50(b), there is substantial evidence from which a reasonable jury could have ruled in favor of Indie Caps on the issues of punitive damages, fiduciary duty, and breach of contract damages.  Mr. Ackerman has also failed to show any ground entitling him to a new trial.  The Court will hold Mr. Bradford to the stipulations he made in open court.

Accordingly,

**IT IS ORDERED** that Defendant Thomas P. Ackerman's "Motion for Judgment as a Matter of Law and Motion New Trial" (Doc. 95) is **DENIED**.

Dated this 14th day of August, 2023.

Honorable Diane J. Humetewa
United States District Judge